*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS KEELEN, | Civil Action No.: 17-4521(FLW) |
| Plaintiff, | |
| v. | OPINION |
| BOROUGH OF KEANSBURG, *et al.*, | |
| Defendants. | |

**WOLFSON**, **U.S. District Judge:**

    Plaintiff Thomas Keelen ("Plaintiff" or "Keelen"), a former bar owner, brought this § 1983 suit against the Borough of Keansburg (the "Borough") and Borough employees, including James K. Pigott, George Hoff, Arthur Boden, James Cocuzza, Thomas Foley and Sean Tonne (collectively, "Defendants"), accusing them of taking unconstitutional retaliatory actions by, *inter alia*, refusing to renew Plaintiff's liquor license. In the instant matter, Defendants move to dismiss the Complaint on the basis that Plaintiff is contractually barred from suit by a previous settlement agreement with the Borough. In the alternative, Defendants invoke *Younger* abstention, and request that this Court abstain from exercising jurisdiction. For the reasons that follow, Defendants motion is **GRANTED**.

## BACKGROUND

For the purposes of this motion, the Court will only recount relevant facts from the Complaint, and take them as true. For over 47 years, Keelen was the owner of TJK Stadium Bar (the "Bar") in Keansburg, New Jersey. *See* Compl., ¶¶ 2-3. Plaintiff is the sole shareholder of Slover Productions, LLC ("Slover"), which held the Bar's liquor license. *Id.* at ¶ 4. Based on the pleadings, Plaintiff and the Borough have had a tumultuous history. In 2001, Plaintiff filed his first § 1983 suit against the Borough for taking certain retaliatory actions against him and his store because, allegedly, Plaintiff served as a witness in a criminal case on behalf of a defendant. *See id.* at ¶¶ 13-16. Among other actions taken against Plaintiff, Plaintiff alleges that the Borough previously suspended the Bar's liquor license in 2001. Following the 2001 lawsuit, however, the liquor license was restored. *Id.* at ¶ 22.

In May 2016, Slover applied for its annual liquor license renewal, which was set to expire on June 30, 2016. *Id.* at ¶ 28. In connection with the application, the Borough requested Plaintiff to attend a town council[1] meeting to discuss the renewal. According to Plaintiff, at the meeting, defendant Pigott, the Chief of Police, recommended the City Council to not renew the license, because of a high level of narcotics activity occurring at the Bar, which required the police to respond to numerous service calls. *Id.* at ¶ 32. Pigott also recommended to the New Jersey Division of Alcohol Beverage Control (the "NJABC") that Solver's

---

[1] Named defendants Boden, Cocuzza, Foley and Tonne are the Borough's council members.

liquor license be permanently suspended for similar reasons. *Id.* at ¶ 43. Ultimately, the liquor license was not renewed by the Borough, and according to Plaintiff, he was "forced" to close the Bar. *Id.* at ¶ 51.

On October 3, 2016, Plaintiff, on behalf of Slover, appealed the Borough's decision to the NJABC. *Id.* at ¶ 52. Following settlement negotiations between Slover and the Borough, "Slover was granted a Plenary Retail Consumption Liquor License with the specific condition that Plaintiff sell the [Bar]." *Id.* at ¶ 53.[2] According to Plaintiff, he subsequently sold the Bar, with a liquor license, at a diminished value. *Id.* at ¶ 54.

Based on the actions of Defendants, Plaintiff brought this § 1983 lawsuit. Plaintiff accuse Defendants of conspiring to deprive Plaintiff of his "constitutional and/or property rights by abusing their authority to harass and retaliate against Plaintiff for testifying in the [criminal] case and having African American clientele and entertainment at the [Bar]." *Id.* at Count One, ¶ 3. In that regard, Plaintiff asserts that Defendants committed, under color of state law, "a physical and regulatory taking of Plaintiff's personal and/or real property in violation of the Fifth and Fourteenth Amendment." *Id.* at Count Three, ¶ 2. Plaintiff also claims that he was subjected to abuse of process in violation of § 1983, and that Defendants retaliated against him in violation of Plaintiff's First Amendment

---

[2] While not pled in the Complaint, in addition to the settlement with the Borough, Slover petitioned the NJABC to accept an offer of $4,500 in lieu of prosecution; in response, the NJABS issued a "Petition to Make Offer in Compromise in Lieu of Prosecution of License," signed by Keelen, that concluded the investigation. *See* Petition dated February 21, 2017.

rights. *Id.* at Count Two, Count Four. Finally, under § 1983, Plaintiff alleges that Defendants committed "selective enforcement" in violation of the Equal Protection Clause. *Id.* at Count Five. In addition, Plaintiff brings parallel state law claims under the New Jersey Civil Rights Act ("NJCRA"). *Id.* at Count Six.

In the instant matter, Defendants move to dismiss the Complaint on the basis that the settlement agreement entered into between the Borough and Plaintiff bars the claims raised here, since Plaintiff had agreed to waive all claims against the Borough arising from the suspension of the liquor license. Alternatively, Defendants seek to invoke the Younger Abstention doctrine, and request the Court to abstain from hearing this case.

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and

quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations and brackets omitted).

## II. Settlement Agreement

Defendants argue that Plaintiff entered into two separate settlement agreements with the Borough, both of which foreclose his right to obtain the relief sough in the Complaint, because each of Plaintiff's causes of action are predicated on the Borough's investigation, the subsequent loss of his liquor license, and its impact on his decision to sell the Bar. According to Defendants, the first settlement agreement was memorialized in emails between Plaintiff's attorney and the Borough's counsel. Defendants submitted these emails as exhibits to their motion. The second agreement was a statutorily authorized "offer in compromise" of a $4,500 fine that Plaintiff, on behalf of Slover, accepted from the NJABC in exchange for the agency ending its disciplinary proceedings against the licensee, Slover.

As a preliminary matter, with respect to the email exchanges between counsel, Plaintiff has not attached, or pled, in the Complaint the content of the emails; Plaintiff has, however, alleged that settlement negotiations between the Borough and Slover took place, and that the parties reached an agreement. Indeed, Plaintiff, in his opposition brief, does not dispute the authenticity of the email exchanges submitted by Defendants. In fact, Plaintiff also relies on these emails in his motion papers. In that regard, because Plaintiff explicitly

6

references the settlement negotiations between Borough counsel and his counsel, the Court will consider the emails on this motion.³ *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.1999)(finding that a court may consider documents that are "integral to or explicitly relied upon in the complaint"); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)(even if a "[c]omplaint does not explicitly refer to or cite [a document] … the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited.").

Under New Jersey law, "an agreement to settle a lawsuit is a contract which, like all other contracts, may be freely entered into, and which a court, absent a demonstration of fraud or other compelling circumstance, shall honor

---

³ For two reasons, I will also consider the Borough's formal Resolution, which ratified the parties' settlement agreement. First, "[w]hen a complaint relies on a document . . . the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). Even if a "[c]omplaint does not explicitly refer to or cite [a document] … the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citations omitted). Here, because the Complaint references the settlement agreement and the Borough's adoption of that agreement, it is appropriate to consider the Resolution. Additionally, public documents may be considered in deciding a motion to dismiss. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004); *see also Herring v. United States*, No. 03-5500, 2004 U.S. Dist. LEXIS 18545, at *7 (E.D. Pa. Sep.10, 2004), *aff'd*, 424 F.3d 384 (3d Cir. 2005). Because the Borough's Resolution is indisputably a public document, for also this reason, I will consider the Resolution and its content. Furthermore, I note that both parties rely on the language of the Resolution in their respective motion papers.

7

and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (internal citation and quotation omitted); *see Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir.2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)). In that regard, state contract law applies in determining whether an enforceable settlement agreement has been reached. *See Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 527-28 (App. Div.1985); *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348- 49 (D.N.J.1996) (holding that "state law governs the construction and enforcement of settlement agreements in federal court").

In New Jersey, a contract arises from offer and acceptance of terms that are sufficiently definite "that the performance to be rendered by each party can be ascertained with reasonable certainty." *West Caldwell v. Caldwell*, 26 N.J. 9, 24-25 (1958); *Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 531 (1956). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, the parties have created an enforceable contract." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427 (1992). An offeree may manifest assent to the terms of an offer through words, creating an express contract, or by conduct, creating a contract implied-in-fact. *See* Restatement (Second) of Contracts § 19(1) (1981). The relationships between the parties or other circumstances may justify the offeror expecting a reply, such that the offeror may correctly assume that the offeree's silence indicates assent to the proposal. *Johnson & Johnson v. Charmley Drug Co.*, 11 N.J. 526, 539 (1953). Thus, when an offeree accepts the

8

offeror's services without expressing any objection to the essential terms of the offer, the offeree has manifested assent to those terms. *Weichert*, 128 N.J. at 436.

Significantly, a formal writing is not necessary to create a contract. *Pascarella v. Bruck*, 190 N.J. Super. 118, 124 (App. Div. 1983). The form of the contract is not the focus; the parties may bind themselves through an informal memorandum. *See Berg Agency v. Sleepworld—Willingboro, Inc.*, 136 N.J. Super. 369, 374 (App. Div. 1975). Indeed, courts will enforce settlement agreements notwithstanding the absence of a formal writing as long as the parties agreed upon the essential terms of a settlement, even if they left the details to be fleshed out in subsequent writings. *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993); *Hagrish v. Olson*, 254 N.J. Super. 133, 138 (App. Div. 1992). Determining whether a term is essential "depends on the agreement and its context and also on the subsequent conduct of the parties . . . ." *JM Agency, Inc. v. NAS Fin. Servs., Inc.*, No. L-1541-05, 2007 N.J. Super. Unpub. LEXIS 1548, at *3 (App. Div. Aug. 3, 2007) (citing Restatement (Second) of Contracts § 131, cmt. g (1981)).

I note that there is a strong public policy in New Jersey favoring the enforcement of settlements. *See Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). Consistent with that policy, courts should "strain to give effect to the terms of a settlement whenever possible." *Dep't of Pub. Advocate v. N.J. Bd. Of Pub. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985). In that regard, the party seeking to set aside the settlement has the burden of proving "extraordinary circumstances to vitiate the agreement" by "clear and convincing evidence." *Casagrande v.*

*Casagrande*, No. C-268-08, 2012 N.J. Super. Unpub. LEXIS 2631, at *5 (App. Div. Dec. 3, 2012); *Moran v. Davita, Inc.*, No. 06-5620, 2013 U.S. Dist. LEXIS 102146, at *13 (D.N.J. Jun. 28, 2013).

In this case, Plaintiff does not contest that a settlement agreement exists, or that certain terms of the agreement were set forth in a series of email exchanges between counsel; rather, Plaintiff maintains that the principal parties to the agreement are the Borough and Slover — the holder of the liquor license — not Plaintiff. In that regard, for support, Plaintiff points to the language of the Resolution and argues that the Resolution explicitly makes a distinction between Slover, as the licensee, and Plaintiff. Plaintiff further argues that it was Slover — not Plaintiff — that agreed to waive all claims against the Borough and its employees. I do not agree with Plaintiff's position.

The relevant language of the Resolution states:

**WHEREAS**, Slover Production LLC ("Licensee") is the holder of Plenary Retail Consumption Liquor License . . . and the owner of TJK Tiki Stadium [the Bar]; and

**WHEREAS**, Licensee is owned, operated and controlled by Thomas Keelen; and

\* \* \*

**WHEREAS** Counsel for Licensee engaged in settlement negotiations with the Borough Attorney for a resolution of a conditional renewal of License . . . subject to various special conditions which are set forth below, and the approval and completion of a person-to-person transfer . . .; and

1. Licensee agrees that neither it nor Thomas Keelen shall re-open [the Bar] in any capacity . . . .

. . .

3. Licensee agrees that if a person-to-person transfer is approved by the Borough Council of the Borough of Keansburg, neither Licensee nor Thomas Keelen shall have any financial interest in or connection wot the transferee in any way whatsoever, nor shall Thomas Keelen or Licensee have any financial interest whatsoever in the transferee's establishment.

4. Licensee agrees and consents to waiving any and all potential litigation related to the non-renewal of License . . . against the Borough of Keansburg including, but not limited to, the Borough Council of the Borough of Keansburg, the Keansburg Borough Manage, and the Keansburg Police Department (the "Waiver Clause").

Keansburg City Council Resolution dated January 18, 2017 (the "Resolution"), pp. 10-11.

Plaintiff argues that the term "Licensee," as used in the Resolution, refers to Slover, not Plaintiff, and that Keelen is explicitly referred to separately in the document. In that regard, Plaintiff maintains that because Keelen was not mentioned in the Waiver Clause, he did not waive any of his personal rights to sue the Borough. While Plaintiff's reading of the Resolution may be technically correct, Plaintiff's argument is based on a faulty premise — that the Resolution is the settlement agreement between the parties; that is not case. The Resolution is merely enacted by the city council in this particular instance to memorialize and approve the parties' agreement. *See, e.g., Mawhinney v. Bennett*, No. 08-3317, 2010 U.S. Dist. LEXIS 1715, at *9 (D.N.J. Jan. 11, 2010); *Petit-Clair v. Hoffman*, No. 14-7082, 2017 U.S. Dist. LEXIS 101311, at * 7 (D.N.J. Jun. 29, 2017)(finding that while plaintiffs are correct that the City Council Agenda dose not reference construction of the boatlift, "however, the Agenda does not

supersede the [settlement agreement].").  While Plaintiff insists that the terms of the settlement agreement are reflected in the Resolution, the Resolution does not represent the actual settlement agreement itself.  Instead, the fact that the parties, *i.e.*, Keelen and the Borough, did not reduce their agreement to a formal writing is of no moment under New Jersey law; the email exchanges between counsel evince the parties' understanding of their rights and obligations under the settlement.

The Borough's counsel, Matthew Donohue, sent Plaintiff's counsel, Michael Kasanoff, an email, with the subject line *Slover Productions v. Keansburg*, stating that the Borough is "placing the Keelen License renewal on for January 10th or 18th [2017]," and that the proposed resolution included the understanding that the Bar "doesn't ever open again; waive all litigation against the Borough; and Mr. Keelen can have no financial connection or return to the new bar."  *See* Donohue Email dated December 16, 2016.  Mr. Kasanoff responded by stating the following:

> Thanks for this outstanding update, which I have shared with my client . . . . You eloquently sum up our understanding below.  A big thank you on behalf of all us [sic] to you . . . and the Keansburg governing officials, for being reasonable and pragmatic in amicably resolving this matter.

Kasanoff Emailed dated December 16, 2016.

On January 11, 2017, Mr. Donohue sent another email to Mr. Kasanoff memorializing the parties' understanding regarding the specific terms of the negotiated settlement agreement.  Those terms were set forth in the email as follows:

- Keelen agrees to never open the [Bar] ever again;
- Keelen agrees the license is inactive and essentially a pocket license, and will only activate upon the completion of an approved person-to-person transfer by the Borough Council;
- Keelen agrees to have no financial interest with the transferee or the transferee's proposed establishment; and
- **Keenlen agrees to waive any and all litigation related to the non-renewal of the license against the Borough including, but not limited to, the Borough Council, the Borough Manager, and the Keansburg Police Department.**

*See* Donohue Email dated January 11, 2017 (emphasis added). Mr. Donohue indicated that if Plaintiff did not agree to those terms, "the settlement is off." *See id.*

The chain of emails between Plaintiff's counsel and the Borough's attorney provide sufficient evidence that the parties reached an enforceable settlement, with precise terms that were agreed upon by the parties — particularly by Plaintiff. *See, e.g., Triffin v. Sunrise Banks*, No. A-3445-14T1, 2017 N.J. Super. Unpub. LEXIS 902, at *11-12 (App. Div. Apr. 12, 2017)(finding that the chain of emails between the parties provided compelling evidence that the parties reached an enforceable settlement); *Trian Group, Ltd. P'ship v. Accident & Cas. Ins. Co.*, No. 2006 U.S. Dist. LEXIS 42931, at *15-16 (D.N.J. Jun. 6, 2006)("[t]he e-mail exchange between counsel on December 2, 2005[,] clearly reflects that, on that date, the parties had an agreement-in-principle . . . ."). Indeed, Mr. Donohue stated that the settlement would not be effectuated if Plaintiff did not agree to certain terms, including waiving any and all litigation related to the non-renewal of the license. Importantly, the email unambiguously states that Keenlen,

13

himself, must agree to the terms as written — not Keelen as a representative of Slover. And, there is no mention that Slover or any other corporate entities must also agree to the terms set forth in the email. Plaintiff does not allege that he raised any issue with the provisions in the email, nor that those provisions were changed prior to the enactment of the Resolution. In fact, the email was sent just days before the Resolution was considered by the city council. And, based on the language of the last email sent to Plaintiff's counsel,[4] the Court may infer that no further amendments were made to the terms of the settlement agreement. Despite the terms of the settlement agreement delineated in that last email between the parties, Plaintiff, nonetheless, attempts to carve himself out of the agreement by relying on the language of the Resolution, a document that does not represent the parties' settlement. Contrary to Plaintiff's position, the terms set forth in the email, not the Resolution, constitute the parties' understanding of the agreement, and hence, the Court is bound to enforce those terms. *See Trian Group*, 2006 U.S. Dist. LEXIS 42931, at *16 ("[w]here a party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement."); *U.S. v. Lightman*, 988 F. Supp. 448, 463 (D.N.J. 1997); *Pascarella*, 190 N.J. Super. at 125. Otherwise, it would violate the basic principles of contract law to permit Plaintiff to rely on technicalities contained in a post-

---

[4] Other than the wording of the Resolution, Plaintiff did not discuss, or submit, any other emails between counsel that impacted the terms of the settlement.

14

contractual document to alter the terms of the settlement that he freely negotiated.

Accordingly, because Plaintiff has waived his rights to bring any claims that relate to the non-renewal of the liquor license, he is contractually barred from bringing those claims asserted in this action.[5]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. Plaintiffs' claims against Defendants are dismissed.

Dated: March 27, 2018 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge

---

[5] Defendants also ask this Court to abstain from hearing this matter under the *Younger* doctrine, however, as dismissal is appropriate on other bases, the Court declines to consider this argument. *See Udoh v. Moreira*, No. 14-2929, 2018 U.S. Dist. LEXIS 14654, at *6 n.1 (D.N.J. Jan. 30, 2018). But, in any event, without delving into the legal arguments, for a number of reasons, I do not find *Younger* abstention applicable. The most important of which is the fact that Plaintiff would not have an adequate opportunity to raise his federal constitutional claims in the state administrative proceedings in the Division of Alcoholic Beverage Control. Plaintiff avers in this case that he has been personally harmed by the alleged wrongful conduct of Defendants, and as a consequence, he is seeking money damages. While Plaintiff may be able to raise those constitutional issues as defenses in his administrative proceedings, those proceedings are not a proper forum to raise Plaintiff's constitutional claims, particularly since Defendants have not shown that Plaintiff is entitled to a *de novo* judicial review of the Division's decision. *See Middlesex Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (*Younger* abstention not available where there is no "adequate opportunity [in the state proceedings] to raise the constitutional claims."); *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986)(finding that state administrative proceedings that do not provide an opportunity for the resolution of the claimant's constitutional contention, are adequate for *Younger* abstention if the state's judicial review of the administrative proceeding provides opportunity for *de novo* hearing of the constitutional claim).

15